```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION


NICK'S CIGARETTE CITY, INC.,    )
                                )
Plaintiff,                      )
                                )
vs.                             )    NO. 2:05-CV-123
                                )
UNITED STATES OF AMERICA,       )
                                )
Defendant.                      )
```

### OPINION AND ORDER

This matter is before the Court on the (1) United States' Motion to Dismiss, filed by the United States of America, on October 13, 2005; and (2) Plaintiff's Request for Oral Argument on its Response in Opposition to Defendant's Motion to Dismiss, filed by Plaintiff, Nick's Cigarette City, Inc., on March 1, 2006. For the reasons set forth below, the motion to dismiss is **GRANTED**. The Clerk is **ORDERED** to **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION**. The request for oral argument is **DENIED** as **MOOT**.

BACKGROUND

Plaintiff, Nick's Cigarette City, Inc. ("Nick's Cigarette"), states a claim of action against the United States of America "for the recovery of federal income tax, penalties, and interest erroneously assessed and collected pursuant to 28 U.S.C. § 1346(a)(1), as

amended." (Compl. ¶ 1.) The relevant facts are as follows.

Count I - The 1997 Refund Claim

Plaintiff timely filed a federal income tax return, Form 1120, for the year 1997 with the Internal Revenue Service ("IRS") Center at Cincinnati, Ohio (the "1997 Return"), and paid $3,234 in income taxes on account of the 1997 Return. (Compl. ¶ 6.)

On October 21, 1999, the IRS began auditing the 1997 Return. On February 17, 2001, an IRS agent issued an examination report along with income tax examination changes, proposing over 10 adjustments. On March 8, 2001, the law firm of Spangler, Jennings & Dougherty, P.C. ("Spangler") responded to the proposed adjustments on behalf of Nick's Cigarette and provided documentation in support of the disputed adjustments. (*See* Kikalos Aff., ¶ 7; Pl.'s Resp. Ex. 2.)

A statutory Notice of Deficiency was issued to Plaintiff on March 13, 2001, and Plaintiff was assessed an additional $23,326 in income taxes and $4,665.20 in penalties. (Compl. ¶¶ 7-8; Compl. Ex. A.) On June 1, 2001, and August 2, 2001, Plaintiff made payments totaling $36,570.64 in income taxes, penalties, and interest on account of this assessment. (Compl. ¶ 8.)

On September 3, 2002, Plaintiff filed an Amended U.S. Corporation Income Tax Return, Form 1120X, with the IRS Center at Cincinnati, Ohio (the "1997 Refund Claim"), for refund of the $36,571. (*Id.* ¶ 10.) Part II of the second 1998 1040X, which required the taxpayer to give

its reasons for the claimed changes, stated: "[a]ttached "Notice of Deficiency" was assessed despite the taxpayers verification of all items in question. The original filing was correct." (Pl.'s Compl. Ex. B, p. 2.) On April 22, 2003, the IRS sent a letter to Plaintiff, stating that the 1997 Refund Claim was denied. (Compl. ¶ 12.) The letter stated: "[a] review of the case showed a statutory notice was issued per Internal Revenue Code Section 6212, and since you failed to petition the United States Tax Court or respond, the tax was assessed per Internal Revenue Code Section 6213." (Pl.'s Compl. Ex. C, p. 1.)

In April of 2005, Nick's Cigarette filed this action to recover federal income tax, penalties, and interest it claims it was erroneously assessed. After the suit was filed, Defendant produced over 6,000 pages of documents pertaining to the audit. (Kikalos Aff., ¶ 25.)

### Count II - The 1998 Refund Claim

Plaintiff timely filed a federal income tax return, Form 1120, for the year 1998 with the IRS Center at Cincinnati, Ohio (the "1998 Return"), and paid $5,437 in income taxes on account of the 1998 Return. (Compl. ¶ 14.)

On November 16, 1999, the IRS began auditing the 1998 Return. On May 21, 2001, Plaintiff filed an Amended U.S. Corporation Income Tax Return, Form 1120X, with the IRS (the "Amended 1998 Return"),

-3-

reporting an additional $4,750 in income taxes, and paying $5,723.30 in income taxes and interest on account of the 1998 Amended Return. (Compl. ¶¶ 15, 16.)

On February 11, 2002, an IRS agent issued an examination report, proposing over 8 adjustments to the 1998 Return. On February 26, 2002, Nick's Cigarette responded to the 1998 examination report in a letter to the IRS and provided supporting documents. (Pl.'s Ex. 5.) A statutory Notice of Deficiency was issued to Plaintiff on March 12, 2002, and Plaintiff was assessed an additional $1,056 in income taxes and $1,161.20 in penalties. (Compl. ¶¶ 17-18; Pl.'s Compl. Ex. D.) Pursuant to the Notice of Deficiency, Plaintiff paid $2,217.20 in income taxes and penalties. (*Id.* ¶ 18.)

On September 3, 2002, Plaintiff filed a second Amended U.S. Corporation Income Tax Return, Form 1120X, with the IRS Center at Cincinnati, Ohio (the "1998 Refund Claim"), for refund of the $7,940. (*Id.* ¶ 20.) The following language appears in Part II of the second 1998 1120X, which requires the taxpayer to give its reasons for the claimed changes:

> (1) Attached "Notice of Deficiency" was assessed despite the taxpayers verification of all items in question.
>
> (2) 1120 "X" dated 5/11/01 was filed in anticipation of "Notice of Deficiency." Original Filing of 1120 was correct.
>
> Line #4 includes:
>     $1161.20 IRS Assessed Penalty
>     $973.20 Assessed Interest

-4-

(Pl.'s Compl. Ex. E, p. 2.)  On April 22, 2003, the IRS sent a letter to Plaintiff, stating that the 1998 Refund Claim was denied.  (Compl. ¶ 22.)  Specifically, the IRS stated: "[a] review of the case showed a statutory notice was issued per Internal Revenue Code Section 6212, and since you failed to petition the United States Tax Court or respond, the tax was assessed per Internal Revenue Code Section 6213." (Pl.'s Compl. Ex. F, p. 1.)

In April of 2005, Nick's Cigarette filed this action to recover federal income tax, penalties, and interest it claims it was erroneously assessed.  After the suit was filed, Defendant produced over 6,000 pages of documents pertaining to the audit.  (Kikalos Aff., ¶ 24.)

The United States has moved to dismiss this action for lack of subject matter jurisdiction, arguing that Plaintiff has not met the jurisdictional prerequisite of filing a proper administrative claim with the IRS prior to filing a claim in this district.

DISCUSSION

For the purpose of analyzing Defendant's Rule 12(b)(1) claim, the following standards apply.  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction.  Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th

Cir. 1986). When jurisdictional allegations are questioned, the plaintiff has the burden of proving that the jurisdiction requirements have been met. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

Motions to dismiss under Rule 12(b)(1) can be either facial attacks or factual attacks. *See Manos v. Caira*, 162 F. Supp. 2d 979, 986 (N.D. Ill. 2001). A facial attack is a challenge to the sufficiency of the pleading itself, whereas a factual attack challenges the factual existence of subject matter jurisdiction. *See Villasenor v. Indus. Wire & Cable, Inc.*, 929 F. Supp. 310, 312 (N.D. Ill. 1996) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). To withstand Defendant's Rule 12(b)(1) motion, Plaintiff must competently prove by a preponderance of the evidence that subject matter jurisdiction exists. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). In this case, the United States claims it is making both a facial and factual attack because it challenges the sufficiency of Plaintiff's complaint (claiming it is legally insufficient to invoke subject matter jurisdiction), and because a valid claim for a refund is a jurisdictional predicate, there is no factual basis for jurisdiction. As detailed below,

Plaintiff's complaint fails to withstand a factual challenge.

Recently, an analogous case, *Kikalos v. United States*, No. 2:04-CV-514, 2006 WL 758367 (N.D. Ind. Mar. 23, 2006), was before the Honorable Judge James T. Moody. In the interest of judicial economy, this Court incorporates the thorough discussion of the applicable legal standard, as set forth in *Kikalos*, as follows:

> The United States has waived its sovereign immunity in order to allow taxpayers to file actions seeking tax refunds: "The district courts shall have original jurisdiction . . . over any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ." 28 U.S.C. § 1346(a)(1). However, Congress has imposed certain terms on this waiver of sovereign immunity, and the United States has consented to be sued for the recovery of taxes under the conditions set forth in section 7422 of the Internal Revenue Code. *Martin v. United States*, 833 F.2d 655, 659 (7th Cir. 1987). Section 7422(a) of the Internal Revenue Code provides:
>> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.
>
> 26 U.S.C. § 7422(a). Thus, a taxpayer's filing of an administrative claim with the IRS is a jurisdictional prerequisite to the maintenance of a tax refund suit. *Martin*, 833 F.2d at 658.
>
> The treasury regulations promulgated under 26

U.S.C. section 7422 set out the procedure for filing a formal claim for a refund. *Id*. at 659. The purposes of the treasury regulations and the refund claim requirement are to: (1) "ensure that the IRS has been given adequate notice of the nature of the claim and the specific facts upon which it is predicated, permitting administrative review and determination," (2) "give the IRS an opportunity to correct any errors that may have been made," and (3) "limit the scope of refund litigation." *Hefti v. IRS*, 8 F.3d 1169, 1173 (7th Cir. 1993).

Treasury Regulation section 301.6402-2(b)(1) provides:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Treas. Reg. § 301.6402-2(b)(1).  A credit or refund request which does not comply with Treasury Regulation section 301.6402-2(b)(1), is not, pursuant to that regulation itself, "considered for any purpose as a claim for refund or credit." *Id.* Where a claimant did not file a refund claim in compliance with Treasury Regulation section 301.6402-2(b)(1), he has not satisfied 26 U.S.C. section 7422, and therefore a suit for that refund must be dismissed for lack of jurisdiction. *See Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir. 1985) (citing *L.E. Myers Co. v. United States*, 230 Ct. Cl. 142, 673 F.2d 1366, 1367 (1982); *Martin*, 833 F.2d at 658-59; *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir. 1979) (per curiam); *Bear Valley Mut. Water Co. v. Riddell*, 493 F.2d 948, 951 (8th Cir. 1974)).

However, even though the Commissioner of the IRS may not waive the Congressionally mandated 26 U.S.C. § 7422 claim requirement, the Commissioner may waive the treasury requirements. *Goulding v.*

-8-

>*United States*, 929 F.2d 329, 332 (7th Cir. 1991) (citing *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293 (1945)).  As such, a claim which fails to satisfy Treasury Regulation 301.6402-2(b)(1) requirements may nonetheless satisfy the 26 U.S.C. section 7422 refund claim requirement where Treasury Regulation 301.6402-2(b)(1) specificity requirements have been waived. *Id*.

*Kikalos*, 2006 WL 758367, at *2-*3.

In this case, the United States challenges this Court's jurisdiction legally and factually, contending that Nick's Cigarette failed to allege they filed, and failed to actually file, a proper and timely administrative claim for refund with the IRS before filing this suit.  (Br. In Supp. Of United States' Mot. To Dismiss, pp. 4-5.)  Specifically, the United States argues that Plaintiff failed to properly apprise the IRS of the basis of its claim for either the 1997 tax year or the 1998 tax year.  In other words, it contends that Plaintiff's refund claims do not meet the specificity requirements in Treasury Regulation section 301.6402-2(b)(1), therefore, the claims do not satisfy the jurisdictional refund claim requirement of 26 U.S.C. section 7422.  In response, Nick's Cigarette argues that its claims were filed in compliance with the Treasury regulations, and, alternatively, that the IRS waived the Treasury regulation requirements.

<u>The 1997 Refund Claim Was Not Sufficient to Establish This Court's Jurisdiction</u>

First, the United States argues that Plaintiff failed to file a

-9-

claim that complied with the specificity requirements of Treasury Regulation section 301.6402-2(b)(1).  For the year 1997, Plaintiff solely told the IRS that the "[a]ttached "Notice of Deficiency" was assessed despite the taxpayers verification of all items in question.  The original filing was correct."  (Pl.'s Compl. Ex. B, p. 2.)

Such a blanket statement fails to "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."  Treas. Reg. § 301.6402-2(b)(1).  This Court agrees with the United States' contention that, based upon this statement, the IRS would have no way of knowing why Plaintiff was claiming it was entitled to a refund.  Plaintiff quotes *National Forge & Ordnance Co. v. United States*, 151 F. Supp. 937 (Ct. Cl. 1957), arguing that the United States applies too strict a standard:

> Attorneys for the Government frequently ask us to apply to claims for refund a requirement of particularity almost as strict as customarily applied to indictments for crime.  The rule of strictissimi juris is not applicable to claims for refund.  All that is required of them, as a predicate for suit in this court is that **they put the Commissioner of Internal Revenue on notice of the ground of the taxpayer's claim** that his taxes were erroneously computed.  This does not have to be stated with any greater particularity than is necessary to draw the Commissioner's attention to the claim he makes in his subsequent suit.

*Id.* at 941 (emphasis added).  But even *National Forge* requires that the taxpayer put the Court on notice of the claim's ground.  Here, Plaintiff's 1120X Form is utterly devoid of any basis for a claim.

There are good reasons why taxpayers are required to apprise the IRS of the basis of their claim:

> These prerequisites serve several purposes. First, they ensure that the IRS has been given adequate notice of the nature of the claim and the specific facts upon which it is predicated, permitting administrative review and determination. Second, they give the IRS an opportunity to correct any errors that may have been made. Third, they limit the scope of the refund litigation.

*Hefti*, 8 F.3d at 1173. Here, Plaintiff's assertion that the "original filing was correct" fails to give the IRS notice of the nature of the claim or facts upon which it is predicated, thus preventing an IRS review.

Plaintiff argues that, "[b]ased on the wealth of documentation provided to the IRS prior to the 1997 Refund Claim, including a letter specifically discussing and analyzing each proposed adjustment, Defendant cannot claim it did not have knowledge of the Taxpayer's claims for refund."  (Pl.'s Resp. In Opp. To Def.'s Mot. To Dismiss, p. 13.)  Plaintiff points to over 6,000 pages of documents it either gave to the IRS or the IRS gathered during the audit, and the March 8, 2001 letter from Spangler, which Plaintiff contends addresses proposed adjustments and sets forth Plaintiff's grounds for opposing the adjustments. (Pl.'s Resp. Ex. 2.)

In response, the United States argues that "[w]hile the Plaintiff may have presented its positions to certain IRS employees in Hammond, Indiana, who conducted the audit, that fact is irrelevant."  (Reply

-11-

Br. In Supp. Of United States' Mot. To Dismiss, p. 6.)  This Court agrees.  The March 8, 2001, Spangler letter and the 6,000 pages of documents do not constitute an informal refund claim.  In *Martin v. United States*, 833 F.2d 655 (7th Cir. 1987), the IRS was apprised of the taxpayer's argument in a protest letter, but the Court found that such did not constitute an informal claim for refund, reasoning:

> The purpose of a claim for refund is to put the government on notice that it should subject the *claim* - as distinguished from merely the legal principles that underlie it - to administrative review.  We do not think that the estate fully appreciates this distinction.  The marital deduction issue was raised in the September letter . . . in connection with the IRS's assessment of a deficiency rather than with a potential refund.  Unfortunately for the estate, the statement in its letter may be viewed simply as a technique of argument . . . .

*Id.* at 660-61 (emphasis in original).  Thus, the *Martin* court drew a distinction between "the IRS's inquiry into its own deficiency assessment" and "an inquiry into the estate's refund claim."  *Id.* at 661.  Similarly, what occurred prior to the IRS' refund inquiry is irrelevant for purposes of determining whether a claim for refund adequately apprises the IRS of the grounds supporting the taxpayer's claim, because the audit process and the refund claim are two distinct administrative proceedings.  In this case, the audit was conducted by IRS personnel in Hammond, Indiana, and the 1120Xs were reviewed by IRS personnel in Cincinnati, Ohio.  As such, the Spangler letter dated March 8, 2001, in which Plaintiff's counsel discusses certain expenses and attaches certain invoices to "help [the IRS] in reviewing [its]

-12-

proposed assessments for the Corporation for 1997" does not constitute an informal claim. (Pl.'s Resp. Ex. 2.)

To the extent Plaintiff argues that the 6,000 pages of documents obtained by the IRS placed the IRS on notice of its claim, this same argument was addressed and rejected by Judge Moody in *Kikalos*:

> The Supreme Court was faced with a similar argument in *Angelus Milling Co.,* 325 U.S. at 299. Petitioner in that case had filed a series of refund claims with the IRS, which the Court characterized as "confusing" and lacking in the information required by the treasury regulations. *Id*. at 296. Petitioner argued that its refund claims taken together with those filed by a closely connected company furnished all of the data required by the treasury regulations. *Id.* at 299. The Court stated that this argument "need not detain [the Court] long," explaining that "it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund . . . . The protection of the revenue authorizes the Commissioner to demand information in a particular form, and he is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the nature of the claim." *Id*. at 299. In any case, under the treasury regulations, the submission of numerous documents will not by itself relieve a claimant of his burden. Rather, a claim must be "sufficient to apprise the IRS that a refund is sought and to *focus attention on the merits* of the dispute so that an examination of the claim may be commenced if the IRS wishes." *Martin v. United States*, 833 F.2d 655, 660-61 (7th Cir. 1987). As the Fourth Circuit explained while addressing the purpose of Treasury Regulation section 301.6402-2(b)(1):
>> The Commissioner should not be left to his own devices in order to discover the precise nature of a taxpayer's claim and thus be placed in a position of having to hazard a guess . . . The Commissioner does not possess the time

> or resources to perform extensive investigations into the precise reasons and facts supporting every taxpayer's claim for a refund.
>
> *Stoller v. United States*, 444 F.2d 1391, 1393 (4th Cir. 1971). Thus, plaintiffs should not have relied on the fact that the IRS possessed over 5,000 audit documents in its files, and further expect that the IRS would "ferret out on its own the specific claims advanced by [plaintiffs]." *First Nat'l Bank of Fort Smith v. United States*, 610 F. Supp. 933, 937 (W.D. Ark. 1985). As with petitioner's argument in *Angelus Milling Co.*, plaintiffs' argument for compliance with the treasury regulations is dependant on information which may have been "somewhere under the Commissioner's roof," and this "is not enough" for plaintiffs were required to submit the information in the form demanded by the IRS. *Angelus Milling Co.*, 325 U.S. at 299.

*Kikalos*, 2006 WL 758367, at *5.

This Court agrees with Judge Moody's assessment, and finds that the 6,000 pages of documents that may have been "somewhere under the Commissioner's roof" in this case do not constitute sufficient notice under Treasury Regulation section 301.6402-2(b)(1).

Thus, with regard to the 1997 Refund Claim, the Court finds that Plaintiff did not file a claim in compliance with Treasury Regulation section 301.6402-2(b)(1). Barring a waiver of the treasury regulations (discussed below), Plaintiff has not complied with the 26 U.S.C. section 7422 jurisdictional prerequisite of a properly filed administrative refund claim. *See Martin*, 833 F.2d at 658-59.

### The 1998 Refund Claim Was Not Sufficient to Establish This Court's Jurisdiction

As with the 1997 Refund Claim, the Court finds Plaintiff also failed to file a claim to the 1998 refund that satisfies Treasury Regulation section 301.6402-2(b)(1). For 1998, Plaintiff's claim was that:

> (1) Attached "Notice of Deficiency" was assessed despite the taxpayers verification of all items in question.
>
> (2) 1120 "X" dated 5/11/01 was filed in anticipation of "Notice of Deficiency." Original Filing of 1120 was correct.
>
> Line #4 includes:
>     $1161.20 IRS Assessed Penalty
>     $973.20 Assessed Interest

(Pl.'s Compl. Ex. E, p. 2.) Once again, Plaintiff has failed to apprise the IRS of the grounds that underlie its 1120X claim. As discussed above, to the extent Plaintiff argues that the 6,000 pages of documents obtained by the IRS during the audit constitute proper notice, this Court rejects this argument.

### The IRS Did Not Waive Any Challenges to the Specificity of the 1997 and 1998 Refund Claims

Plaintiff argues that even if the 1997 and 1998 Refund Claims did not comply with Treasury Regulation section 301.6402-2(b)(1), it still satisfied the 26 U.S.C. section 7422 refund claim requirement because compliance with the regulations was waived. In making this argument, Plaintiff relies almost entirely upon *Goulding v. United States*, 929

-15-

F.2d 239 (7th Cir. 1991), in which the Court stated that "the filing of a general or vague claim may be sufficient to confer district court jurisdiction if the IRS had knowledge of the claim, thereby making the initial rejection of the claim for refund a determination on the merits." *Id.* at 332-33. In *Goulding*, the Court recognized that "[t]he specificity requirements of Treasury Regulation § 301.6402-2(b)(1) may be waived by the Commissioner of the IRS, if the IRS has sufficient knowledge of the claim and makes a determination on the merits." *Id.* at 332 (citing *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1993); *Angelus Milling Co.*, 325 U.S. 293; *Vishnevsky v. United States*, 581 F.2d 1249-52 (7th Cir. 1978)).

Judge Moody's recitation of the facts in *Goulding* is adopted here:

> The underlying dispute in *Goulding* involved tax returns of several partnerships. Goulding filed a claim for a refund, but the claim did not specify its basis or the reasons Goulding believed he was entitled to the requested refund. The IRS denied Goulding's claim on November 19, 1987 "per audit determination." The district court held that this initial denial of Goulding's claim could not be interpreted as a decision on the merits and a waiver of the specificity requirements. The Seventh Circuit Court of Appeals disagreed, finding that "per audit determination" is ambiguous. The court then engaged in a review of the record, specifically noting that: (1) by November 19, 1987, the IRS had already conducted an in-depth investigation of the partnerships whose tax returns were at issue; (2) in September 1987 the IRS litigated some of the same issues in a suit brought by Goulding's son; and (3) the IRS was able to respond substantively to Goulding's claims throughout stages of the proceeding. In

> addition, the court pointed out that the IRS "did not raise the waiver issue when denying the administrative claims, nor in their answer to the complaint. *Id*. The court determined the IRS "was well aware of the merits of Goulding's claims when it denied the administrative claim for a refund 'per audit determination,'" and, noting that the Government agreed that it waived the defense of sufficiency of the claim, found that "[t]he record fully supports the conclusion that the IRS initially considered the claim on its merits." *Id*. at 333.

*Kikalos*, 2006 WL 758367, at *6.

Here, Plaintiff claims that, as in *Goulding*, "the IRS was well aware of the nature of the Taxpayer's 1997 and 1998 Refund Claims and in possession of extensive documentation sufficient to perform a suitable investigation when the Refund Claims were filed." (Pl.'s Resp. In Opp. To Def.'s Mot. To Dismiss, p. 19.)  This Court finds *Goulding* distinguishable.  First, in this case, the IRS did not deny Plaintiff's 1120Xs on the merits.  The IRS' letters to Plaintiff denying the 1997 and 1998 claims state the following reason why the refunds were denied: "A review of the case showed a statutory notice was issued per Internal Revenue Code Section 6212, and since you failed to petition the United States Tax Court or respond, the tax was assessed per Internal Revenue Code 6213."  (*See* Pl.'s Compl. Exs. C, F.)  In contrast to the language denying the claim "per audit determination" in *Goulding*, here, the IRS states Plaintiff "failed to petition" the tax court or respond.  This does not constitute a denial of Plaintiff's claims on the merits, but rather a denial based upon the failure to supply grounds for the petition.

-17-

Although there is no dispute that the IRS received the 6,000 pages of documents and the Spangler letters, there is no evidence in the record that the IRS actually considered the merits underlying the Plaintiff's 1120Xs. While "it is not essential for the establishment of a waiver that the Commissioner communicate his ruling on the merits to the taxpayer," as shown by *Goulding*, "[t]he showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him." *Angelus Milling Co.*, 325 U.S. at 297. Here, Plaintiff has pointed to nothing in the record to show it is unmistakable that the IRS examined Plaintiff's claims on the merits.

Moreover, Plaintiff admits that the documents were forwarded to the IRS before Plaintiff received the statutory notice of deficiency, but, as this Court noted earlier, the events before the claim for refund are irrelevant because "the IRS's inquiry into its own deficiency assessment" is distinct from "an inquiry into the estate's refund claim." *Martin*, 833 F.2d at 661; *see also BCS Fin. Corp. v. United States*, 118 F.3d 522, 524-27 (7th Cir. 1997) (finding discussions between IRS and taxpayer before the claim for refund was filed irrelevant in determining whether a claim had been filed).

Finally, Plaintiff argues that the United States waived any argument regarding the necessity of informing the IRS of the grounds for its claim for refund by not raising the defense in its answer to

Plaintiff's complaint.  To the contrary, Defendants can raise the issue of jurisdiction at any time, even on appeal.  *See Larson v. United States*, 274 F.3d 643, 648 (1st Cir. 2001) (citations omitted) ("Sovereign immunity, however, is a jurisdictional defense that may be raised for the first time in the court of appeals").

The Court thereby finds that the IRS did not waive the treasury regulation requirements (Treas. Reg. § 301.6402-2(b)(1)), *Angelus Milling Co.*, 325 U.S. at 298) and consequently, Plaintiff was required to file a refund claim which complied with the treasury regulations. Because Plaintiff's 1997 Refund Claim and 1998 Refund Claim were not filed in compliance with Treasury Regulation section 301.6402-2(b)(1), Plaintiff did not file an administrative claim that satisfies 26 U.S.C. section 7422.  Plaintiff's complaint cannot withstand a factual challenge to jurisdiction, and thus the Court will not address the legal sufficiency of the complaint.  Accordingly, Plaintiff's complaint must be dismissed for lack of jurisdiction.

CONCLUSION

For the reasons set forth above, the United States' motion to dismiss is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION**. The request for oral argument is **DENIED** as **MOOT**.

**DATED:  September 14, 2006**               /s/RUDY LOZANO, Judge
                                             **United States District Court**